## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARINE POWER HOLDING, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO:   14-912** |
| **MALIBU BOAT, LLC** | **SECTION: "I" (4)** |

### ORDER

Before the Court is Plaintiff's **Motion for Reconsideration (R. Doc. 82)**, seeking an Order from the Court to reconsider its ruling denying Plaintiff's Motion to Compel (R. Doc. 51) regarding its Request for Production Nos. 18, 38, 49, and 50 made during oral argument on December 21, 2015. The ruling was memorized in the Court's January 11, 2016, written Order. *See* R. Doc. 80. The motion is opposed. *See* R. Doc. 93.  The motion was heard by oral argument on Wednesday, January 27, 2016.

## I.     Background

This action is a claim for breach of contract and detrimental reliance between Marine Power, a supplier of marine engines, and Malibu Boats, a Loudon, Tennessee, based company that manufactures sport boats. R. Doc. 1. Marine Power designs, manufactures, and sells high performance sport boat engines. Malibu manufacturers and sells sport boats. *Id.* at 2. In 20013, Marine Power and Malibu entered into a business relationship. Malibu sent purchase orders to Marine Power for sport boat engines, which directed Martine Power to construct the engines in Louisiana. *Id.* In particular, the parties contracted to supply Marine Power's LS3 engines in Malibu's boats. *Id.* at 3.

This litigation arises out of purchase order 1125557 ("557") sent by Malibu to Marine Power on February 14, 2014. Purchase order 557 called for Marine Power to manufacture 571 engines for Malibu at a price of $5,954,102.00. Plaintiff argues that purchase order 557 did not

provide any dates or details for Marine Power to deliver the engines. Rather, purchase order 557 was a "blanket" purchase order and stated that "delivery date requirements will be in accordance with issued delivery orders." Marine Power argue that it made significant capital commitments (e.g., investments in parts/inventory, re-tooling costs, etc.) to be prepared to satisfy Malibu's requirements. *Id.* at 4.

In late March of 2014, Plaintiff argues that Malibu's conduct changed drastically. *Id.* at 5. Malibu notified Marine Power that Malibu would not be using Marine Power as its supplier of any engines for the 2015 model year. Plaintiff contends that up to this point, Malibu had never rejected a delivery or complained about the quality, the condition, or the timing of delivery for any engine that Marine Power manufactured. However, on April 15, 2014, Plaintiff argues that Malibu unilaterally terminated purchase order 557.

Marine Power subsequently initiated this action and contends that Malibu breached its obligations under purchase order 557 in bad faith and caused Marine Power to suffer extensive damages. Marine Power also argues that Malibu should be liable to it for detrimental reliance because Marine Power made substantial investments in tooling and inventory to fill the purchase order. *Id.* at 11.

Defendant also asserts a number of counterclaims. Malibu alleges that Marine Power breached and/or repudiated purchase order 557, failed to produce engines to be placed in inventory, failed to produce engines ready for delivery to Malibu, and improperly delivered a number of engines that Marine Power were required to hold as inventory. Defendant's counterclaims include breach of duty of good faith and fair dealing, breach of warranty, breach of contract pursuant to Louisiana Civil Code Art. 1906, and breach of contract of sale pursuant to Louisiana Civil Code Art. 2438. R. Doc. 14, p. 50-52.

2

As to the instant motion, on December 21, 2015, the Court held oral argument on Plaintiff's Motion to Compel (R. Doc. 51). In its motion, Plaintiff sought an Order from the Court to compel Defendant to produce documents responsive to Request for Production Nos. 18, 38, 49, and 50. Request for Production No. 18 sought all communication between Defendant and Indmar Marine Engines, from January 1, 2014, until the present. R. Doc. 51-3, p. 18. Request for Production No. 38 sought the same for any individual that is not an employee, agent, officer, or representative of Defendant or any affiliate entity. *Id.* Plaintiff contended that these requests are reasonably calculated to lead to the discovery of admissible evidence regarding Plaintiff's bad faith breach of contract claim. *Id.* Plaintiff further contended that its requests are relevant because Defendant may have unilaterally terminated purchase order 557 because it obtained a more favorable offer from another engine supplier. *Id.* at 5.

Request for Production Nos. 49 and 50 sought agreements, contracts, purchase orders, and all communications between Defendant and engine manufacturers other than Plaintiff from January 1, 2013, until the present that relate to supplying Plaintiff with engines. Defendant objected to the requests and argued that they were unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. R. Doc. 51-3, p. 18.

Defendant argued that Plaintiff was abusing the judicial process by pleading its allegation in indefinite terms without knowing of any specific wrongdoing and then basing massive discovery requests upon vague allegations. R. Doc. 53, p. 2. Defendant contended that Plaintiff is conducting a fishing expedition that is speculative and does not justify an inquiry into Defendant's relationship with other engine suppliers. *Id.*

During oral argument, the Court questioned whether Plaintiff established a foundational basis to support its theory that Defendant terminated the purchase order in bad faith because of a

more favorable offer from Indmar. In response, Plaintiff's counsel was unable to direct the Court to factual evidence to support his theory. Plaintiff's counsel stated that his requests could lead to the discovery of such information because Defendant's termination of the supply agreement after a two year relationship with Plaintiff was coupled with speculation that Defendant was negotiating with a third party.

The Court found that Plaintiff's bad faith breach of contract claim is speculative because no evidence was presented that suggested that this theory likely occurred. Therefore, the Court found that Plaintiff's requests seemed more akin to a fishing expedition than an actual need for the information. Accordingly, the Court denied Plaintiff's motion to compel regarding Request for Production Nos. 18, 38, 49, 50.

In its instant motion, Plaintiff is seeking to move the Court to reconsider its ruling denying its motion to compel regarding the above requests. It argues that the requests are relevant to its bad-faith breach of contract claim. In opposition, Defendant argues that the motion should denied because Plaintiff has not identified an error of fact or law nor presented new evidence for the Court to consider. Defendant further argues that Plaintiff is rehashing arguments that previously were denied. *See* R. Doc. 93.

## II.    <u>Standard of Review</u>

Although the Fifth Circuit has noted that the Federal Rules do not recognize a motion for consideration, it has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b). *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990). Rules 59 and 60, however, apply only to final judgments. When a party seeks to revise an order that adjudicates fewer than all the claims among all of the parties, Federal Rule of Civil Procedure 54(b) controls. Fed.R.Civ.P. 54(b). *See also,*

*Helena Labs.*, 483 F.Supp.2d 538 (motion for reconsideration under Rule 59(e) treated as under Rule 54(b) because reconsideration of partial summary judgment order was sought and no final judgment had yet been entered in the case). The Rule states:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Under Rule 54(b), the district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." However, this broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays. Further, the decision of the district court to grant or deny a motion for reconsideration will only be reviewed for an abuse of discretion. *Martin v. H.M.B. Constr. Co.*, 279 F.2d 495, 496 (5th Cir. 1960) (citation omitted). *See also, Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996).

The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider under the same standards that govern Rule 59(e) motions to alter or amend a final judgment. *See, e.g., Castrillo*, 2010 WL 1424398, at *3; *Rosemond v. AIG Ins.*, 2009 WL 1211020, at *2 (E.D.La. May 4, 2009) (Barbier, J.). A Rule 59(e) motion "calls into question the correctness of a judgment," and courts have considerable discretion in deciding whether to grant such a motion. *Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp.* (*In re Transtexas Gas Corp.*), 303 F.3d 571, 581 (5th Cir. 2002). In exercising this discretion, courts must carefully balance the interests of justice with the need for finality. Courts in the Eastern District of Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard: (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;

5

(2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law.

Importantly, Rule 54(b) motions, like those under Rules 59(e) and 60(b), are not the proper vehicle for rehashing evidence, legal theories, or arguments. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). Instead, they "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir.1989). Reconsideration, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly" and the motion must "clearly establish" that reconsideration is warranted. *Templet v. Hydro Chem Inc.*, 367 F.3d 473, 478–79 (5th Cir.2004).

Moreover, it is well-settled that motions for reconsideration should not be used to raise arguments that could, and should, have been made before entry of an order or to re-urge matters that have already been advanced by a party. *See Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990). When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted. *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F.Supp.2d 471 (M.D.La. 2002). *See also, Mata v. Schoch*, 337 B.R. 138 (S.D.Tex. 2005) (refusing reconsideration where no new evidence was presented). *See also, FDIC v. Cage,* 810 F.Supp. 745, 747 (D.Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

III.    **Analysis**

Marine Power again argues that its requests seek the discovery of relevant and admissible evidence regarding its bad-faith breach of contract claim. R. Doc. 82-1, p. 5. Marine Power further argues that under Louisiana law, formal discovery in a bad-faith breach of contract case may be longer and more complex than in other civil litigation because the Plaintiff must prove two claims – the breach of contract claim and the bad-faith aspect of the case. *Id.*

Marine Power contends that it is justified in believing that Malibu may have been motivated by some unstated, nefarious reason when it terminated the contract because Malibu sued Marine power in federal court in Tennessee the same day that it terminated purchase order 557. Marine Power argues that the termination was a part of a "larger scheme." *Id.* at 7.  On this point, Marine Power states that in a separate action in Tennessee in which Malibu sought a declaratory judgment as to the termination of purchase order 557, the Court found that:

> The record shows that the parties were engaged in negotiations regarding the 557PO, when Malibu chose to simultaneously reject a delivery of 26 engines, terminated the 557PO, and file suit seeking declaratory judgment as to the termination, all on the same day. Malibu misled Marine into believing the parties were engaged in meaningful negotiations on the 557PO.

*Id.* at 6. In addition, Marine Power contends that during the December 16, 2015, deposition of Ritchie Anderson, who is Malibu's Chief Operating Officer, he testified that Malibu was negotiating with other supplies at the same and that other supplies, in particular Indmar, were not pleased that Malibu was contemplating buying engines from Marine Power. *Id.* at 7. Marine Power argues that it is entitled to confirm whether Malibu got a better deal from another supplier after terminating purchase order 557 and whether Indmar views motivated Malibu to terminate purchase order 557. *Id.*

In opposition, Malibu argues that Marine Power does not present manifest errors of fact or law nor submits new evidence for the Court to consider. R. Doc. 93, p. 5. Malibu further argues that the deposition of Ritchie Anderson is unrelated because the testimony was related exclusively to Malibu's decision to purchase LS3 model engines, which is not at issue in the case, from Marine Power in mid-2013. *Id.* at 6. Malibu states that purchase order 557 which is at issue concerns the purchase of 5.7L, 6.0L, and LSA engines only. *Id.* Malibu argues that Marine Power is rehashing arguments asserted in its motion to compel and that the Court's Order, which was entered after thorough briefing, argument, and judicial inquiry, should remain. *Id.* at 10.

The issue before the Court is whether Marine Power has demonstrated a manifest error of law or fact, or present newly discovered evidence to warrant the Court's reconsideration of its prior well-reasoned Order (R. Doc. 68). During the December 21, 2015, hearing the Court stated that for it to grant Marine Power's request it must "give [the Court something] that suggest that there was some nefarious motive to retain Indmar." R. Doc. 68, p. 122. Upon the Court's review of the December 21, 2015, hearing transcript and the Plaintiff's prior submission, the Court previously evaluated: (1) Louisiana law as it relates to the elements of a bad faith of contract claim; (2) whether the filing of Malibu's Tennessee lawsuit coupled with termination of the contract constituted an indication of bad faith on the part of Malibu; and (3) the factual foundation, or lack thereof, that Marine Power relied on to assert its claim. *See id* at 128.

The only new information mentioned in the instant motion is the deposition of Mr. Anderson. However, his deposition does not advance Plaintiff's position because Mr. Anderson did not testify that Malibu was negotiating the purchase of engines from Indmar at the time it decided to terminate purchase order 557 which is at issue in the litigation. The Court also notes that a motion for reconsideration is not the proper vehicle for advancing legal arguments that could

have been presented earlier. Mr. Anderson was deposed on December 16, 2015, and the testimony is not newly discovery evidence because it was readily available to use during the December 21, 2016, hearing or in a supplemental submission in advance of oral argument. Plaintiff is now rehashing its prior motion, in hopes that the Court will now accept their requests. Having previously denied Plaintiff's requests and upon its failure to assert new evidence or an error in the Court's previously application of law or fact, it is ordered that the Plaintiff's motion to reconsider is denied.

**IV**      **Conclusion**

   Accordingly,

   **IT IS ORDERED** that Plaintiff's **Motion for Reconsideration (R. Doc 82)** is **DENIED**.

   New Orleans, Louisiana, this <u>29th</u> day of January 2016.

   **KAREN WELLS ROBY**
   **UNITED STATES MAGISTRATE JUDGE**