UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARINE POWER HOLDING, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO:    14-0912** |
| **MALIBU BOAT, LLC** | **SECTION: "I" (4)** |

<u>ORDER</u>

Before the Court is **Defendant's Motion to Compel (R. Doc. 47),** seeking an Order from the Court to compel Plaintiff to respond fully to written discovery request. The motion is opposed. *See* R. Doc. 58. The motion was heard by oral argument on December 21, 2016.

I.    <u>Background</u>

This action is a claim for breach of contract and detrimental reliance between Marine Power, a supplier of marine engines, and Malibu Boats, a Loudon, Tennessee, based company that manufactures sport boats. R. Doc. 1. Marine Power designs, manufactures, and sells high performance sport boat engines. Malibu manufacturers and sells sport boats. *Id.* at 2. In 20013, Marine Power and Malibu entered into a business relationship. Malibu sent purchase orders to Marine Power for sport boat engines, which directed Martine Power to construct the engines in Louisiana. *Id.* In particular, the parties contracted to supply Marine Power's LS3 engines in Malibu's boats. *Id.* at 3.

This litigation arises out of purchase order 1125557 ("557") sent by Malibu to Marine Power on February 14, 2014. Purchase order 557 called for Marine Power to manufacture 571 engines for Malibu at a price of $5,954,102.00. Plaintiff argues that purchase order 557 did not provide any dates or details for Marine Power to deliver the engines. Rather, purchase order 557 was a "blanket" purchase order and stated that "delivery date requirements will be in accordance with issued delivery orders." Marine Power argue that it made significant capital commitments

(e.g., investments in parts/inventory, re-tooling costs, etc.) to be prepared to satisfy Malibu's requirements. *Id.* at 4.

In late March of 2014, Plaintiff argues that Malibu's conduct changed drastically. *Id.* at 5. Malibu notified Marine Power that Malibu would not be using Marine Power as its supplier of any engines for the 2015 model year. Plaintiff contends that up to this point, Malibu had never rejected a delivery or complained about the quality, the condition, or the timing of delivery for any engine that Marine Power manufactured. However, on April 15, 2014, Plaintiff argues that Malibu unilaterally terminated purchase order 557.

Marine Power subsequently initiated this action and contends that Malibu breached its obligations under purchase order 557 in bad faith and caused Marine Power to suffer extensive damages. Marine Power also argues that Malibu should be liable to it for detrimental reliance because Marine Power made substantial investments in tooling and inventory to fill the purchase order. *Id.* at 11.

Defendant also asserts a number of counterclaims. Malibu alleges that Marine Power breached and/or repudiated purchase order 557, failed to produce engines to be placed in inventory, failed to produce engines ready for delivery to Malibu, and improperly delivered a number of engines that Marine Power were required to hold as inventory. Defendant's counterclaims include breach of duty of good faith and fair dealing, breach of warranty, breach of contract pursuant to Louisiana Civil Code Art. 1906, and breach of contract of sale pursuant to Louisiana Civil Code Art. 2438. R. Doc. 14, p. 50-52.

As to the instant motion, Defendant propounded Interrogatories and Request for Production upon Plaintiff on September 23, 2015. R. Doc. 47, p. 1. Plaintiff responded on October 23, 2015. Despite Plaintiff's production of documents, Defendants argues that certain

responses provided by Plaintiff remain deficient. In particular, Defendant argues that the following discovery request remain deficient: Interrogatory Nos. 1, 2, 3, 4, and 5, 10, 12, 13, 14, 15, and 16 and Request for Production No. 22, 30, 31, 34, 81, 96, 97, 99-102, and 109-111.

## II.    Standard of Review

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1) specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1) also specifics that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Under Rule 26(b)(2)(C), discovery may be limited if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

The Court notes that the discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

III.   **Analysis**

A.   **Interrogatories**

1.   **Interrogatory No. 1**

Interrogatory No.1 request that for each engine that Plaintiff manufactured under purchase order 557 it identify: (1) the date the engine was completed and the serial number assigned to the engine, (2) the date that the engine was placed into Plaintiff's inventory, (3) the date that the engine was delivered to Malibu, and (4) the  location of the engine if it was not delivered or accepted by Malibu whether sold to a third-party or not. Defendants contend that Plaintiff's chart produced in response to the request does not provide a "completion date or inventory date" for the engines. R. Doc. 47-1, p. 3.

In opposition, Plaintiff argues that its discovery response directed Defendant to  Chart #1 and Chart #5 with information about each engine, including the date that each engine received a serial number. Plaintiff contends that besides that information it does not maintain information regarding "completion dates" or "inventory dates." R. Doc. 58, p. 3.

During oral argument, Plaintiff's counsel represented to the Court that it provided the serial numbers and the date that the serial numbers were placed on the engines. Plaintiffs' counsel stated that Marine Power does not produce the date that the engines were manufactured. Defendant's counsel stated that although Plaintiff provided the date that the engines received a serial number, the serial number dates do not indicate the date that the engines were manufactured. Plaintiff's counsel stated that it gave Defendant's counsel all of the information that it has and that the serial numbers have connectivity to the completion date of the engines. However, Plaintiff's counsel also state that there may be gaps in its paperwork.

After listening to the parties' arguments, the Court ordered that to the degree it does not have the information requested by the Defendant, it should affirmatively state that it does not have the information. Plaintiff's counsel also agreed to supplement its response to the extent that it has documents that show the completion date. The Court ordered that for any engine for which Plaintiff does not have documents referencing the completion date, it should state that the completion date is unknown. The Court orally ordered that the response to Interrogatory No. 1 be supplemented **no later than December 3, 2015**.

2.      **Interrogatory No. 2**

Interrogatory No. 2 request that Plaintiff: (1) describe its damages in detail, (2) provide the calculations used for each item of damages claimed, and (3) identify all documents or communications that support its claimed damages. R. Doc. 47-1, p. 3. Defendants states that while Plaintiff referred Defendant to four charts, Plaintiff failed to provide the calculations upon which the figures on the charts are based on and failed to identity which documents it relied upon for the information on the charts. *Id.* at 3. Defendants argue that by filing the instant lawsuit, Plaintiff placed its alleged damages at issue; thus Defendant contends that it is entitled to know how Plaintiff calculated its alleged damages. Defendant contends that Plaintiff's refusal to provide the calculations prevents its expert from analyzing or preparing a report concerning Plaintiff's damages and further they are entitled to know how the damages were calculated. *Id.*

In opposition, Plaintiff contends that the charts speak for themselves, but if Defendant has any factual questions about the charts, it may clarify its confusion during upcoming depositions of Plaintiff's fact witnesses. R. Doc. 58, p. 4. Plaintiff also argues that the Court has set a December 21, 2015, deadline for Plaintiff to provide its expert reports and the expert is still

in the process of compiling his report; thus, a final calculation of Plaintiff's damages has not yet been calculated.

Although not cited by either party, Federal Rules of Civil Procedure 26(a)(1)(A)(iii) appears to be the rule applicable here. Pursuant to this rule a party must, without awaiting a discovery request, provide to the other party "a computation of each category of damages by the disclosing party – who must also make available for inspection and copying as under Rule 34 the document or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including material bearing on the nature and extend of injuries suffered" Fed. R. Civ. P 26(a)(1)(A)(iii). Rule 26 also permits parties to obtain discovery "regarding any matter, not privilege that is relevant to the claim or defense of any party." Fed.R.Civ. P 26(b)(1).

Under Rule 26(a)(1)(A)(iii), a party is required to produce not only his method for calculating his alleged damages **but also an actual computation of his damages**. *Luna v. Del Monte Fresh Produce (Southeast), Inc.*, 2007 WL 1500269 (N.D. Ga. 2007) (emphasis added). Defendants are entitled to know how a Plaintiff arrives at its computation of damages. *Wilson v. Navika Capital Group, LLC,* 2014 WL 253904 (S.D. Tex. June 4, 2014).

During oral argument, the Court reviewed the charts provided by Plaintiff's counsel and found them to be deficient because they fail to provide documentation that supports its cost assessment. The Court therefore orally ordered that for every cost item that is identified on Plaintiff's chart that it also provided documentation to support its numbers. If Plaintiff does not have supportive documentation for the numbers on Charts 1, 2, 3, 4, the Court ordered Plaintiff's counsel to affirmatively state whether there are backups that support the serial numbers referenced on the charts and either produce the backups or respond that they are not available.

Accordingly, the Court orally ordered that response to **Interrogatory No. 2 be supplemented no later than December 30, 2015**.  The Court further orally ordered that the plaintiff should provide written verified responses to the Answers to Interrogatories as required by FRCP 33 **no later than December 30, 2015**.

3.     **Interrogatory No. 3**

Interrogatory No. 3 request   the production of information for each engine that was manufactured between February 14, 2014 the date that purchase order 557 was terminated and April 15, 2014, for any purpose other than fulfillment of purchase order 557. R. Doc. 47-2, p. 7. The requested information included the engine model, the date that the engine was completed, and the name and addresses of the third party that received the engine. *Id.*

In opposition, Plaintiff contends that the request is broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. R. Doc. 47-4, p. 7. Plaintiff contends that the instant lawsuit concerns the alleged unilateral termination of purchase order 557 and the damages to which Marine Powers is entitled to because of the termination. R. Doc. 58, p. 4. Plaintiff also contends that information regarding engines that were manufactured for other customers during that time period have no relevancy to this lawsuit. Plaintiff also contends that it took a significant amount of time to compile information about the engines that were built for purchase order 557 and it should not be further burdened by compiling information that has not relevant to this litigation.

In considering Interrogatory No. 3, the Court orally sustained the plaintiffs relevancy objection. The Court found that the defendant had no right to know whether the plaintiff produced engines for other companies during this time period. Accordingly, Defendants request as to Interrogatory No. 3 was denied.

4.      **Interrogatory Nos. 4 and 5**

Interrogatory Nos. 4 and 5 request that Plaintiff identify all parts, equipment, goods, and supplies that were in its possession or acquired before and after April 15, 2015, which it claims were purchased in order to fulfill purchase order 557. R. Doc. 47-2, p. 7. Defendant claims that the information is relevant to Plaintiff's claim that in reliance upon the purchase order it acquired substantial parts, equipment, good and supplies. R. Doc. 47-1, p. 4. Defendant contends that Plaintiff's provided chart that lists thousands of parts but does not identity when any parts or equipment were received by Marine Power. Defendant further argues that Plaintiff had a duty to mitigate its alleged damages at issue and whether Defendant received any parts of equipment after the purchase order was terminated, and if so whether Plaintiff promptly canceled orders.

The Defendant contends that even after it cancelled the purchaser order, the defendant kept building engines. Defendant therefore requested specifically the parts the Plaintiff had in inventory on April 15, 2014.

In opposition, Plaintiff essentially gives the same responses as Interrogatory No. 2 that the charts speak for themselves and any confusion can be resolved when Plaintiff's fact witnesses are deposed. Plaintiff also argues that a full calculation of damages is still in the process of being completed and will be provides when its expert completes his report. R. Doc. 58, p. 5. Notably Plaintiff does not argue that the requested information is unduly burdensome or not reasonably calculated to lead to the discovery of admissible evidence.

The Court orally held that the degree to which the plaintiffs are not able to determine the inventory quantity on hand as of April 15, 2014, the date the purchase order was terminated, that it should supplement its written response to affirmatively state so as their position.

5. **Interrogatory No. 10**

Interrogatory No. 10 seeks the status of completion as of April 15, 2015, which is the date that the purchase order was terminated, for each engine listed in a document provided in connection with a prior mediation. The document lists engines that Marine Power contends were manufactured in reliance upon the purchase order. Defendant contends that it is entitled to know whether Plaintiff failed to mitigate its damages by stopping production of the engines when the purchase order was terminated. R. Doc. 47-1, p. 5.

In opposition, Plaintiff again points the Defendants to two charts that it argues include the date that each engine was "serialized" which is the date that it received a serial number. R. Doc. 58, p. 5. Plaintiff argues that beyond that it does not maintain information regarding "completion dates" as requested by Defendant. Plaintiff does not argue that the request is broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

The Court noted that it addressed the subject matter of Interrogatory No. 10 in its ruling on Interrogatory No. 7 and counsel for the mover agreed.

6. **Interrogatory No. 12**

Interrogatory No. 12 ask that Plaintiff identify: (1) each engine that it sold to a third part that was originally constructed for Defendant, (2) the consideration received by Plaintiff, (3) the work that Plaintiff performed to each engine to facilitate the sale, (4) the specific costs that Plaintiff incurred in modifying each engine, and (5) any other costs incidental to the sale of each engine. R. Doc. 47-1, p. 10. Defendant argues that Plaintiff sold an number of engines that were originally built for Defendant to third parties any damages claimed by Plaintiff should be reduced by the sale of any such engine. R. Doc. 47-1, p. 5.

In opposition, Plaintiff argues that it already has provided detailed information to Malibu about engines sold to third parties. R. Doc. 58, p. 6.  Plaintiff further responded that the work that was generally required to modify the 5.7L engines originally built for Malibu for sale to the other customers is outlined in MPPO-00001273.  Plaintiff further responded that additional task would have been required to modify 6.0L and 6.2L engines originally built for Malibu for sale to other customers.

Plaintiff also contends that it has already produced engine work order for all such engines show the specific work that was done on each engine. *Id.* Plaintiff further indicates that the consideration received from the buyers of engines originally built for Malibu is reflected on Chart #5. Plaintiff further contends that the costs incurred by marine Power incidental to the sale of engines originally built for Malibu to other customers are identified on Chart #3.  *Id.*  Plaintiff further responded that it suffered extensive damages as a result of the defendants actions but that it has been able to partially mitigate its damages by modifying the engines' it originally built for Malibu.

During the hearing of the matter after listening extensively to the position of the parties, the Court orally order the plaintiff to supplement their response by providing the part numbers and also provide the cost associated with each. The Court further gave counsel for the plaintiff the option of providing the documents and/or producing a witness who would testify about the documents as the information is not readily apparent by a review of the document.  The plaintiff was thereafter orally ordered to supplement its responses to Interrogatory No. 12 **no later than January 7, 2016**.

### 7.   <u>Interrogatory No. 13</u>

Interrogatory No. 13 asks for Plaintiff to identify the efforts take to sell, utilize, or cancel or returns parts that it lists in Exhibit II Inventory Damages $813,139.75. (R. Doc. 47-2, p. 20) which list thousands of parts that Maine Power argues were purchased in reliance upon Defendant's purchase order. R. Doc. 47-1, p. 7. Defendant argues that Plaintiffs make general statements about its attempt to market, sell or return parts, but failed to provide any part-specific data. Defendant further argues that the information is relevant because Plaintiff's effort to mitigate its damages is an important issue in litigation. *Id.* at 8. Defendant claims that in light of the substantial out of damages sought by Plaintiff, it is entitled to the information requested on a part-by-part basis.

In opposition, Plaintiff argues that it has produced responsive documents relating to the request. R. Doc. 56, p. 6. Plaintiff's response state that it has modified its engines designs for other customers to utilized parts that were originally for use in Malibu's engines and have returned items and paid re-stocking fees to mitigate its damages associated with parts that were originally obtained for use in Malibu engines. R. Doc. 47-1, p. 16. Plaintiff further argues that this request is another example of Defendant attempt to impose an undue burden on it.

The Court orally found that the answer provided to Interrogatory No. 13 was sufficient as written. Counsel for the Plaintiff however advised the court that he would honor his duty to supplement if he deemed it appropriate.

### 8.   <u>Interrogatory No. 14</u>

Interrogatory No. 14 asks Plaintiff to identify the amount received, any costs incurred that were incidental to the sale, and the profit that Plaintiff received in connection with each part, piece of equipment of good that Plaintiff claims it obtained in reliance upon its obligation under

the purchase order. Defendant also requests the name of the person who purchased the part, piece of equipment of good. Defendant argues that this information is relevant because Plaintiff's requested damages should be reduced by profit it received through the sale of parts that it obtained in reliance upon the purchase order. R. Doc. 47-1, p. 8.

In response, Plaintiff argues that the highlighted parts of Chart #2 were parts obtained by it to fulfill the purchase order. R. Doc. 58, p. 6. Plaintiff states that any questions of any of those parts were sold after April 15, 2015, and not reflected on the chart. *Id.* Plaintiff argues that it is not obligated to undertake the extremely burdensome task of individually identifying all parts that have been separately sold, add them into the chart, and then subtract any amount that Plaintiff received. *Id.*

As mentioned previously, under Rule 26(a)(1)(A)(iii), a party is required to produce not only its method for calculating his alleged damages but also an actual commutation of his damages. *Luna*, 2007 WL 1500269. Defendants are entitled to know how a Plaintiff arrives at its computation of damages. *Wilson v. Navika Capital Group, LLC*, 2014 WL 2534904 (S.D. Tex. June 4, 2014).

The Court orally found that the plaintiff gave the defendant a credit for the cost of the part but not the profit made on the sale of the parts sold to third parties which impacts the Plaintiff's loss profits as requested in Interrogatory 14(d). The Plaintiff was thereafter orally ordered to supplement its responses to **Interrogatory 14(d) no later than January 7, 2016**.

## 9. <u>Interrogatory No. 15</u>

Interrogatory No. 15 seeks for Plaintiff, for various expenses that it is claiming as damages to identify: (1) the expenses that Plaintiff would have incurred had the purchase order be fully performed, (2) the factual and legal basis upon which Plaintiff is seeking reimbursement,

(3) efforts taken by Plaintiff to mitigate damages, and (4) which supplies that Plaintiff contends it was unable to sell or utilize. R. Doc. 47-12, p. 12. Defendant argues that the chart that Plaintiff refers to contains numerous expenses unrelated to Plaintiff's purchase order and/or its not recoverable in this litigation. R. Doc. 47-1, p. 8.

In opposition, Plaintiff argues that it provided a detailed chart (Chart #3) that identified various miscellaneous damages that it incurred in connection with the termination of the purchase order. R. Doc. 58, p. 7. Plaintiff contends that the chart speaks for itself and any confusion can be clarified during the depositions of Plaintiff's fact witnesses.

The Court orally found that the information sought by this Interrogatory was previously covered as the plaintiff was required to provide the backup to Chart #3. Upon agreement of counsel, the plaintiff will supplement this response by explaining whether they consumed the parts in their normal business **no later than January 7, 2016**.

### 10.    Interrogatory No. 16.

Interrogatory No. 16 seeks a detailed explanation of how Plaintiff calculated the gross margins and contra profit for each engine for which it claims a loss in profit. R. Doc. 47-1, p. 9. Defendant states that Plaintiff failed to provide any actual calculations for engine models identified on its Lost Profits List (R. Doc. 47-2, p. 28). Defendant argues that because Plaintiff has filed to provide any actual calculations of any of the figures on its list of claimed lost profits it is impossible for Plaintiff and its experts to analyze Plaintiff's methodology for determining lost profits. *Id.*

In opposition, Plaintiff argues that its response to this request clearly explains how its lost profit figures were calculated. Plaintiff's answer to Interrogatory No. 16 states:

> Marine Power states that gross margins were calculated by subtracting the total cost to manufacture an engine from the price paid by the buyer of the engine.

> Marine Power further states that contra profits are created using contra parts numbers which are given specific cost and used in the bill of material of engines and kit parts. These contra parts numbers generate a negative inventory balance as engines are serialized and parts are put into kits. These negative balances are adjusted each month, and are treated as revenue that is booked and sued to pay for supplies, further warrant expense, tooling, capital investment, machine shop labor, production labor, and machine amortization.

R. Doc. 47-4, p. 18. Plaintiff further argues that to the extent that Defendant has factual questions pertained to it calculations, those questions can be asked during the deposition of its witnesses. R. Doc. 58, p. 7.

Counsel for the defendant conceded that the information sought in this Interrogatory was covered in the courts earlier ruling requiring the supplementation of the damages calculation in Interrogatory No. 2.

### B.       Request for Production

#### 1.       Request for Production Nos. 21 and 22

Request for Production Nos. 21 and 22 seek all documents and communication in support of Plaintiff's assertion that Jay Vertzel, a former employee of Plaintiff, is a theif and a liar. R. Doc. 47-5, p. 13. Defendant states that during a prior deposition a representative of Plaintiff asserted that believed Vetzel is a liar. *Id.* at 10. Defendant's request all documents and communication of Plaintiff's assertion that Vertzel is a liar. Defendants request that Plaintiff be directed to produce documents and communications response to this request for the Court's in camera inspection.

In opposition, Plaintiff argues that Request Nos. 21 and 22 calls for production of information that is protected by the attorney work-produce doctri21 ne. Plaintiff states that it has already produced non-privileged material responsive to these requests. R. Doc. 47-5, p. 14

14

The Court orally ordered that Plaintiff produce a privilege log no later than seven days from the signing of this order. Counsel for the plaintiff indicated that he would supplement the response to Request for Production No. 20 and 21 no later than December 31, 2015.  Plaintiff's counsel failed to comply with the court's oral order of December 21, 2015.  The order required a written update to the Court's e-file box advising of the number of documents that would be itemized on the privilege log. As a result, the Court finds that the response to Request for Production No. 20 and 21 must be supplemented with a privilege log no later than Friday, February 4, 2016, at 12:00 noon.

## 2.      Request for Production No. 30

Request for Production No. 30 request all documents reflecting Plaintiff's profit or loss for the sale of each engine that was manufactured by Plaintiff in reliance upon or in connection of the purchase order but was subsequently sold to a third-party after the purchase order was terminated. R. Doc. 47-5, p. 17. Defendant argues that it is entitled to documents that would allow it to determine which specific parts were removed from each engine sold to a third party, the parts that were added to each engine and the labor costs incurred  in connection with selling each engine sold to a third party. R. Doc. 47-1, p. 11.

In response, Plaintiff states that it has already produce to Plaintiff all material responsive to its request and complied Chart #5, which list the amount paid from third-parties that purchased engines originally intended for the Plaintiff.

The Court orally found that the Plaintiff provided Defendant the tools to do the calculation. Counsel for the Defendant thereafter conceded that Request for Production No. 30 is moot.

3.      **Request for Production No. 31**

Request for Production No. 31 seeks all documents that reflect an alternations or work that Plaintiff had to make or perform to render each engine acceptable to a third-party buyer. R. Doc 47-5, p. 17.

In response, Plaintiff states that it has already produced to Plaintiff all materials responsive to its request and complied Chart #5, which lists the amount paid from third-parties that purchased engines intended for the Plaintiff.

The Court orally found that Request for Production No. 31 is moot.

4.      **Request for Production No. 34**

Request for Production No. 34 seeks all documents reflecting the dates that engines that were manufactured for Plaintiff and are still in Plaintiff's possession, were constructed and completed. R. Doc. 47-5, p. 19. Defendant argues that documents provided by Plaintiff only provide the completion dates for a limited number of engines. Defendant acknowledges that Plaintiff provided a list of dates when engines were assigned serial numbers, but argue that Plaintiff has not produced the underlying documents. R. Doc. 47-1, p. 12.

In response, the Plaintiff states that it has already produced all material response to the request. Plaintiff states that it has already provided dates that each engine was serialized. Plaintiff states that it does not maintain information regarding "completion dates" or "inventory" dates. R. Doc. 58, p. 8.

The Court found that its earlier ruling provided for the production of the information sought in Request for Production 34 rendering it now moot.

**5.**     **Request for Production No. 81**

Request for Production No. 81 seeks documents related to engines manufactured by Plaintiff between February 14, 2014 and April 15, 2014, for any other purpose other than fulfillment of the purchase order.

In response, Plaintiff argues that the request is overly board, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff argues that its production of engine that were not a part of the purchase order is irrelevant to the instant litigation. R. Doc. 58, p. 9.

The Court found that its earlier ruling provided for the production of the information sought in Request for Production No. 81 such that it is moot.

**6.**     **Request for Production Nos. 96 and 97**

Request for Production No. 96 seeks financial statement from January 1, 2013, to present. Request for Production No. 97 seek income tax returns for the same period. R. Doc. R. Doc. 47-5, p. 50. Defendant argue that these requested documents provide substantial data relating to Plaintiff's profits and losses both prior to and after the events that gave rise to the instant litigation. Defendant contends that if their base line profitability remained the same then they were not damaged.

In opposition, Plaintiff argues that Defendant has not demonstrated that it is entitled to discovery of its income tax returns or financial documents. Plaintiff contends that Defendant has not established a compelling need for Defendant's tax returns or financial statements.

Income tax returns are highly sensitive documents which courts are reluctant to order routine disclosure as a part of discovery. *Natural Pipeline Co. of America v. Energy*

*Gathering, Inc.,* 2 F.3d 1397, 1411 (5th Cir. 1993). This is because not only are the taxpayer's privacy concerns at stake but unanticipated disclosure of our federal tax laws given the self-reporting, self-accessing character of the income tax system. *Id.* For the court to order disclosure of tax returns, it must find "that the returns are relevant to the subject matter of the action" and "that there is a compelling need for the returns because the information contained therein is not other readily obtainable." *Mohnot v. Bhansali*, 2001 WL 515242 (E.D. La. 2001) (citing *S.E.C. v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D. N.Y. 1985)).

The Court orally found that the income tax documents were not relevant or probative of an issue in the case. Therefore, the Request for Production of Documents No. 96 and 97 is denied.

### 7.   Request for Production Nos. 99-102

Request for Production Nos. 99-102 seek documents relating to Plaintiff's sale of all model (5.7, 6.0L, and LSA) engines covered under the purchase order to third parties from April 15, 2014 to the present.

Plaintiff contends that the requests are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. R. Doc. 47-5, p. 51. Plaintiff contends that engines manufactured for other customers during this time period is irrelevant to the instant litigation. R. Doc. 58, p. 10.

The Court orally ordered that the response to Request for Production Nos. 99-102 is insufficient and that Plaintiff is required to supplement its response to identify the names of companies who purchased the 5.7, 6.0L and LSA engines no later than January 7, 2016.

### 8.     Request for Production Nos. 109-111

Request for Production Nos. 109-11 seeks the production of documents that shows the manufacturing process for all model engines constructed in fulfillment of or in reliance upon the purchase order. R. Doc. 47-5, p. 56. Defendant argues that these documents would confirm whether labor costs Plaintiffs contend that it incurred are accurate. R. Doc. 47-1, p. 14.

Plaintiff contends that the request ask for documents already in Plaintiff's possession, custody or control which is disputed by the defendant. Counsel for the defendant acknowledged that no witness was questioned about the documents produced. As a result, the Court found the documents produced in response to Request for Production 109-111 are responsive and the request to compel a supplemental response to these series of requests is denied.

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that Defendant's **Motion to Compel (R. Doc. 47) is GRANTED in Part, DENIED in Part**, and **DENIED as MOOT in Part**.

**IT IS GRANTED** as to Interrogatory Nos. 1, 2, 4, 5, 10, 12, 14(d), 15, 16, and Request for Production Nos. 21, 22, 99-102. The Court orally ordered that Plaintiff's responses to Interrogatory Nos. 1, 2, 4, 5, 10 shall be supplemented no later than **December 31, 2015**. The Court further orally ordered that Plaintiff's responses to Interrogatory Nos. 12, 13, 14(d), 15, 16, shall be supplement no later than **January 7, 2016**. The Court further orders that responses to Request for Production No. 20 and 21

must be supplemented with a privilege log no later than **Friday, February 4, 2016, at 12:00 noon**.

      **IT IS DENIED** as to Interrogatory Nos. 3, 13, 96, 97.

      **IT IS DENIED AS MOOT** as to Request for Production Nos. 30, 31, 34, 81, 96, 97, 109-111.

      New Orleans, Louisiana, this 29th day of January 2016.

        **KAREN WELLS ROBY**
     **UNITED STATES MAGISTRATE JUDGE**