UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARINE POWER HOLDING, LLC**     **CIVIL ACTION**

**VERSUS**     **NO:**    **14-0912**

**MALIBU BOAT, LLC**     **SECTION: "I" (4)**

## ORDER

Before the Court is Defendant's **Motion for Reconsideration (R. Doc. 113)** seeking an Order from the Court to reconsider its previous Order (R. Doc. 109) regarding its Motion to Compel (R. Doc. 47) as to Request for Production Nos. 96 and 97. R. Doc. 113, p. 3. The motion is opposed. R. Doc. 122. The motion was heard by oral argument on March 9, 2016.

**I.**     **Background**

This action is a claim for breach of contract and detrimental reliance between Marine Power, a supplier of marine engines, and Malibu Boats, a Loudon, Tennessee, based company that manufactures sport boats. R. Doc. 1. Marine Power designs, manufactures, and sells high performance sport boat engines. Malibu manufacturers and sells sport boats. *Id.* at 2. In 20013, Marine Power and Malibu entered into a business relationship. Malibu sent purchase orders to Marine Power for sport boat engines, which directed Martine Power to construct the engines in Louisiana. *Id.* In particular, the parties contracted to supply Marine Power's LS3 engines in Malibu's boats. *Id.* at 3.

This litigation arises out of purchase order 1125557 ("557") sent by Malibu to Marine Power on February 14, 2014. Purchase order 557 called for Marine Power to manufacture 571 engines for Malibu at a price of $5,954,102.00. Plaintiff argues that purchase order 557 did not provide any dates or details for Marine Power to deliver the engines. Rather, purchase order 557 was a "blanket" purchase order and stated that "delivery date requirements will be in accordance

with issued delivery orders." Marine Power argue that it made significant capital commitments (e.g., investments in parts/inventory, re-tooling costs, etc.) to be prepared to satisfy Malibu's requirements. *Id.* at 4.

In late March of 2014, Plaintiff argues that Malibu's conduct changed drastically. *Id.* at 5. Malibu notified Marine Power that Malibu would not be using Marine Power as its supplier of any engines for the 2015 model year. Plaintiff contends that up to this point, Malibu had never rejected a delivery or complained about the quality, the condition, or the timing of delivery for any engine that Marine Power manufactured. However, on April 15, 2014, Plaintiff argues that Malibu unilaterally terminated purchase order 557.

Marine Power subsequently initiated this action and contends that Malibu breached its obligations under purchase order 557 in bad faith and caused Marine Power to suffer extensive damages. Marine Power also argues that Malibu should be liable to it for detrimental reliance because Marine Power made substantial investments in tooling and inventory to fill the purchase order. *Id.* at 11.

Defendant also asserts a number of counterclaims. Malibu alleges that Marine Power breached and/or repudiated purchase order 557, failed to produce engines to be placed in inventory, failed to produce engines ready for delivery to Malibu, and improperly delivered a number of engines that Marine Power were required to hold as inventory. Defendant's counterclaims include breach of duty of good faith and fair dealing, breach of warranty, breach of contract pursuant to Louisiana Civil Code Art. 1906, and breach of contract of sale pursuant to Louisiana Civil Code Art. 2438. R. Doc. 14, p. 50-52.

As background to the instant motion, on December 21, 2015, the Court held oral argument on Defendant's Motion to Compel (R. Doc. 47) which included Request for Production Nos. 96

and 97. *See* R. Doc. 109. Request for Production No. 96 sought financial statement from January 1, 2013, to present. Request for Production No. 97 sought income tax returns for the same period. R. Doc. R. Doc. 47-5, p. 50. Defendant argued that the requested documents provide substantial data relating to Plaintiff's profits and losses both prior to and after the events that gave rise to the instant litigation. In response, Plaintiff argued that Defendant did not demonstrate that it was entitled to discovery of its income tax returns or financial documents. The Court denied the motion as to those requests and held that the financial statements were not relevant or probative of an issue in the litigation. *See* R. Doc. 109, p. 18.

Defendant maintains that after the December 21st hearing, Plaintiff produced the expert report of Ronald Gagnet in which he opined a new damage theory that the attempt to sell engines that were specifically built for Defendant to other jet-customers caused it to lose customers. R. Doc. 113-1, p. 2. Defendant contends that Court denied their request without the benefit of knowing of the new damage theory. *Id.* at 2.

In response, Plaintiff maintains that the requests are overbroad and that it has produced all of the financial data that it provided to Gagnet to render his report. R. Doc. 122.

## II. Standard of Review

Although the Fifth Circuit has noted that the Federal Rules do not recognize a motion for consideration, it has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b). *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990). Rules 59 and 60, however, apply only to final judgments. When a party seeks to revise an order that adjudicates fewer than all the claims among all of the parties, Federal Rule of Civil Procedure 54(b) controls. Fed.R.Civ.P. 54(b). *See also, Helena Labs.*, 483 F.Supp.2d 538 (motion for reconsideration under Rule 59(e) treated as under

Rule 54(b) because reconsideration of partial summary judgment order was sought and no final judgment had yet been entered in the case). The Rule states:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Under Rule 54(b), the district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." However, this broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays. Further, the decision of the district court to grant or deny a motion for reconsideration will only be reviewed for an abuse of discretion. *Martin v. H.M.B. Constr. Co.,* 279 F.2d 495, 496 (5th Cir. 1960) (citation omitted). *See also, Garcia v. Woman's Hosp. of Tex.,* 97 F.3d 810, 814 (5th Cir. 1996).

The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider under the same standards that govern Rule 59(e) motions to alter or amend a final judgment. *See, e.g., Castrillo*, 2010WL 1424398, at *3; *Rosemond v. AIG Ins.*, 2009 WL 1211020, at *2 (E.D.La. May 4, 2009) (Barbier, J.). A Rule 59(e) motion "calls into question the correctness of a judgment," and courts have considerable discretion in deciding whether to grant such a motion. *Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp.* (In re Transtexas Gas Corp.), 303 F.3d 571, 581 (5th Cir. 2002). In exercising this discretion, courts must carefully balance the interests of justice with the need for finality. Courts in the Eastern District of Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard: (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in

order to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law.

Importantly, Rule 54(b) motions, like those under Rules 59(e) and 60(b), are not the proper vehicle for rehashing evidence, legal theories, or arguments. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). Instead, they "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). Reconsideration, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly" and the motion must "clearly establish" that reconsideration is warranted. *Templet v. Hydro Chem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004).

Moreover, it is well-settled that motions for reconsideration should not be used to raise arguments that could, and should, have been made before entry of an order or to re-urge matters that have already been advanced by a party. *See Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990). When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted. *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F.Supp.2d 471 (M.D.La. 2002). *See also, Mata v. Schoch*, 337 B.R. 138 (S.D.Tex. 2005) (refusing reconsideration where no new evidence was presented). *See also, FDIC v. Cage, 810 F.Supp.* 745, 747 (D.Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

**III.   Analysis**

Defendant contends that the Court should consider its previous Order denying production of Plaintiff's financial statement and income tax returns. R. Doc. 113-1, p. 2. Defendant argues that at the time of the Court's order both Defendant and the Court were unaware that Plaintiff

5

would assert a new damages theory that it lost customers after it attempted to sell engines that were built exclusively for Malibu. *Id.* Further, Defendant argues that the damages theory was revealed when Plaintiff's expert produced his report which based on financial information that Plaintiff's previously argued were irrelevant to any of its claims. Defendant now seeks the financial records that Plaintiff's expert used to render his report, including the documents used to create the "Summary Financial Records." *Id*. at 2.

In opposition, Plaintiff argues that its claim that lost customers because of its dealing with Marine Power was previously known in advance of the December 21st hearing. R. Doc. 122, p. 6. Plaintiff also contends that the discovery requests remain overbroad and that it has provided all of the financial information that it gave to its expert to render his report.

During oral argument, counsel for Defendant confirmed that Plaintiff produced summary financial documents. However, counsel stated that in order to analyze the lost profit claim, his expert needs income statements, balance sheets, and general ledgers for the years 2011, 2012, 2013, and 2014. Counsel stated that he is entitled to test the numbers to determine if the actual financials match the summary sheets. Plaintiff's counsel reiterated that the requests are irrelevant.

Considering the Plaintiff's lost profit claim which was not mentioned during the December 21st hearing, the Court ordered Plaintiff to produce its income statements and balance sheets for the years 2011, 2012, 2012, 2014, and through November 30, 2015. The Court reasoned that Defendant is entitled to verify the numbers that were calculated by Plaintiff's expert regarding the claim. Accordingly, Request for Production No. 96 is granted subject to the above limitation.

Further, the Court denied Defendant's request regarding Request for Production No. 97 which sought tax returns for the same period. Income tax returns are highly sensitive documents which courts are reluctant to order routine disclosure as a part of discovery. *Natural Pipeline Co.*

*of America v. Energy Case Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993). Defendant did not express a compelling need for the tax returns to verify Plaintiff's expert report in light of the Court's order to produce the stated financial documents.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendant's **Motion for Reconsideration (R. Doc. 113)** is **GRANTED in part** and **DENIED in part**.

**IT IS GRANTED** as to Request for Production No. 96. Plaintiff shall produce income statements and balance sheets for the years that are referenced in its expert report which include 2011, 2012, 2013, 2014, and through November 30, 2015. Plaintiff shall produce those documents no later than **fourteen (14) days** from the signing of this Order.

**IT IS DENIED** as to Request for Production No. 97.

New Orleans, Louisiana, this 21st day of April 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

7