UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARINE POWER HOLDING, LLC**                     **CIVIL ACTION**

**VERSUS**                                        **NO:   14-912**

**MALIBU BOATS, LLC**                             **SECTION: "I" (4)**

## ORDER

Before the Court is Non-Party Donovan Marine's **Motion to Quash or, Alternatively, Motion for Protective Order Regarding Malibu's Non Party Subpoenas Directed to Donovan Marine, Inc. and Michael Schroeder (R. Doc. 174)** seeking an Order to quash four subpoenas that were issued by Malibu Boats which all have a May 26, 2016, compliance date. The motion is opposed. R. Doc. 177. The motion was heard by oral argument on May 25, 2016.

**I.     Background**

This action is a claim for breach of contract and detrimental reliance between Marine Power, a supplier of marine engines, and Malibu Boats, a Loudon, Tennessee, based company that manufactures sport boats. R. Doc. 1. In 2013, Marine Power and Malibu entered into a business relationship. Malibu sent purchase orders to Marine Power for sport boat engines, which directed Martine Power to construct the engines in Louisiana. *Id.* In particular, the parties contracted to supply Marine Power's LS3 engines in Malibu's boats. *Id.* at 3.

The relationship broke down when Malibu notified Marine Power that it would not be using Marine Power as its supplier of engines for the 2015 model year. Litigation ensued thereafter. Marine Power claims that the termination of the relationship was in bad faith and resulted in significant damages. *Id.*[1]

---

[1] Malibu also asserted a number a counterclaims that it voluntarily dismissed on May 18, 2016. *See* R. Doc. 171.

As to the instant motion, Donovan Marine,[2] seek to quash four subpoenas that seek various financial statements and testimony and/or production of documents related to a laptop that was issued to Jay Vetzel while he was employed by Marine Power. R. Doc. 174-1, p. 2. Donovan Marine argues that Malibu's subpoena seeks financial information that outside of the Court's previous order that Marine Power was only required to provide income statements and balance sheets for the years that are referenced in its expert report. R. Doc. 174-1, p. 3. Further, it argues that requests regarding the laptop is now moot as Marine Power recently produced the "original" hard drive that was used in Vetzel's laptop. *Id.* at 6.

In response, Malibu contends that it is entitled to financial documents that Donovan maintained for Marine Power. R. Doc. 177, p. 7. Malibu also argues that the subpoenas are not moot because it has not yet determined that the recently produced hard drive is complete and intact as it existed when Vetzel returned it upon his termination. *Id.* at 4.

## II.   **Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)

---

[2] Donovan Marine is an affiliate and agent of Marine Power. Donovan Marine shares common ownership with Marine Power and it (or another affiliate with common ownership) provides extensive services for Marine Power, including the preparation of financial statements and the rendition of IT services. *See* R. Doc. 167, p. 3.

2

(quoting *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." Coleman v. American Red Cross, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* At 45(c)(1). A motion for a subpoena must be quashed or modified where, inter alia, the subpoena "(i) fails to allow a reasonable time to comply . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."

To determine whether the subpoena presents an undue burden, court within the Fifth Circuit consider the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F. 3d 812, 818 (5th Cir. 2004). Rule 45(c)(3)(A). A court may, in lieu of the above, "order appearance or production under specified conditions if the serving party (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." *Id.* at 45(c)(3)(C).

**III. <u>Analysis</u>**

Donovan Marine seeks to quash four subpoenas which all have a May 26, 2016, compliance date. Two subpoenas were issued on May 13th and the others were issued on 16th and 17th, respectively. The subpoenas seek financial records and documents and devices related to the laptop that Jay Vetzel used while he was employed by Marine Power. Donovan Marine states that

the first four categories of the May 13, 2016, subpoenas seek financial documents[3] that are outside of the Court's previous order that Marine Power was only required to provide income statements and balance sheets for the years that are referenced in its expert report. R. Doc. 174-1, p. 3. It states that the subpoena would subject Donovan to an undue burden and expense. *Id.* at 3. The remaining topics of the May 13, 2016, issued to Donovan Marine and the other three subpoenas seek testimony and/or the production of documents and devices related to the laptop. *Id.* at 4. Further, subpoenas issued to Michael Schroender[4] and Donovan Marine seek deposition testimony and data regarding HDClone 4.2 software, which create images files of hard drives, that was installed on the laptop.

In opposition, Malibu states that the purpose of the subpoenas is to disclose the full extent of Marine Power's abuse of the discovery process by its refusal: (1) to produce a copy of Jay Vetzel's email account that he used while employed by Marine Power until six months after it was requested, and (2) failing to preserve the laptop after Vetzel returned it after his termination. R. Doc. 177, p.1. Malibu contends that although Marine Power has now produced the "original" hard drive, the subpoenas are not moot because it has not yet determined that the hard drive is complete and intact, as it existed when Vetzel returned it. *Id.* at 4. Malibu also argues that it is entitled to show the steps that Marine Power took to frame Vetzel for stealing proprietary information by claiming that he installed and executed data copying software. *Id.* at 6.

---

[3] In particular, the subpoena seeks: (1) All Documents used to calculate and/or arrive at, or that are otherwise relevant to, the figures listed in the COST OF GOODS SOLD row under the MPH OEM MAJOR category on MP-PO-00012864 (attached hereto) for Periods 07, 08, 09, 10, 11, and 12; (2) All Documents used to calculate and/or arrive at, or that are otherwise relevant to, the figures listed in the DAMAGES – OEM MAJOR row on MP-PO-00012870 (attached hereto) for fiscal year 2014; (3) All Documents used to calculate and/or arrive at, or that are otherwise relevant to, the figures listed in the TTL OEM MAJOR OPERATE EXPENSE row on MP-PO-00012870 (attached hereto) for the fiscal years 2013 and 2014, and (4) All Documents used to calculate and/or arrive at, or that are otherwise relevant to, the figures listed in the DAMAGES – OEM MAJOR row on MP-PO-0012892 (attached hereto) for fiscal year 2015. R. Doc. 174-1, p. 6.

[4] Schroender is a computer programmer employed by Donovan Marine. R. Doc. 167, p. 3.

Further, Malibu contends that it is entitled to financial information and back-up documents that Donovan maintained for Marine Power. R. Doc. 177, p. 7. Malibu states that it learned during the deposition of Donovan's CPA who assisted in the preparation of financial documents[5] that documents which include the line item Marine Power "OEM MAJOR" relate to Marine Power. Malibu argues that back-up documents related to "OEM MAJOR" line items will aid in its assessment of Marine Power's alleged damages. *Id.* at 8.

During oral argument, the Court questioned whether counsel has any proof that the recent production is the hard drive as it existed when Vetzel was terminated. Counsel was unable to provide proof to support his position and conceded that other employees used the hard drive subsequent to Vetzel returning it. Finding that Donovan Marine was unable to confirm that the recently discovered hard drive contains the email account as it existed when Vetzel returned the laptop, the Court denied the motion as to testimony and/or materials related to the laptop.

Regarding financial documents, based on the submission Malibu contends that it recently determined that financial documents that Marine Power produced include "OEM MAJOR" line items that were previously unidentifiable until Donovan's CPA testified that the line items relate to Marine Power. Malibu now seeks the back-up documents that were used to calculate the figures for any line item that include "OEM MAJOR" as its description. Donovan argues that the requests would subject it to undue burden and expense and that Malibu has been provided sufficient backup documents to evaluate Marine Power's expert report. R. Doc. 174-1, p. 3.

Previously, the Court ruled that Marine Power was only required to produce income statements and balance sheets for the years that are referenced in its expert report. *See* R. Doc. 159,

---

[5]The financial documents were produced pursuant to the Court's April 21, 2016, Order in which it order Marine Power to produce income statements and balance sheets for the years 2011, 2012, 2012, 2014, and through November 30, 2015.

5

p. 7. Thereafter, Marine Power produced financial statements some of which include the subject "OEM MAJOR" line item. Malibu argues that the Court's order does not preclude it from seeking additional document from Donovan Marine. R. Doc. 177, p. 8. Malibu argues that the requested backup documents will "aid in [its] analysis of, Marine Power's alleged damages."[6]

Under Rule 26(a)(1)(A)(iii), a party is required to produce not only his method for calculating his alleged damages but also an actual computation of his damages. *Luna v. Del Monte Fresh Produce (Southeast), Inc.*, 2007 WL 1500269 (N.D. Ga. 2007) (emphasis added). Defendants are entitled to know how a Plaintiff arrives at its computation of damages. *Wilson v. Navika Capital Group, LLC*, 2014 WL 223211 (S.D. Tex. June 4, 2014). This includes documents and materials on which its expert's computation was based. *Jonibach Management Trust v. Wartburg Enterprises, Inc.,* 136 F. Supp. 3d 792, 801 (S.D. Tex. 2015). Further, the question of undue burden on a non-party requires a Court to balance the subpoena's benefits and burdens, and "calls upon the court to consider whether the information is necessary and unavailable from any other source." *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004) (internal citations omitted).

Malibu did not argue that Marine Power's expert relied on these documents to render his report nor did it include an affidavit from its expert that the requested documents are necessary to conduct her analysis or verify Plaintiff's computation. In addition, the deposition transcript of Donovan's CPA Malibu did not inquire into the substance of the backup documents used to calculate any "OEM MAJOR" line item or how those documents are any different from financial documents which have already been produced. Accordingly, Donovan's request is granted as to this issue.[7]

---

[6]Malibu writes that "these back-up documents would provide additional information regarding, and aid in Malibu's analysis of Marine Power's alleged damages[.]" R. Doc. 177, p. 8.

[7]*See*, n. 2

6

### IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the Non-Party Donovan Marine's **Motion to Quash or, Alternatively, Motion for Protective Order Regarding Malibu's Non Party Subpoenas Directed to Donovan Marine, Inc. and Michael Schroeder (R. Doc. 174)** is **GRANTED in part and DENIED in part**.

**IT IS GRANTED** as to Request Nos. 1, 2, 3, and 4 of Malibu's May 13, 2016, subpoena to Donovan Marine, Inc.

**IT IS DENIED** as to Request Nos. 5, 6, 7, 8, 9, 10, 11, and 12 of Malibu's May 13, 2016, subpoena to Donovan Marine, Inc.; all requests of Malibu's May 13, 2016, subpoena to Michael Schroeder; all requests of Malibu's May 16, 2016 subpoena to Donovan Marine, Inc.; all requests of Malibu's May 17, 2016, subpoena to Donovan Marine, Inc. Documents and devices responsive to the subpoenas shall be produced no later than **fourteen (14)** days from the signing of this Order.

New Orleans, Louisiana, this 7th day of June 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**