UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARINE POWER HOLDING, L.L.C.**                                        **CIVIL ACTION**

**VERSUS**                                                                           **No. 14-912**

**MALIBU BOATS, LLC**                                                       **SECTION I**

**ORDER AND REASONS**

Before the Court is a motion[1] in limine filed by defendant, Malibu Boats, LLC ("Malibu"), to exclude certain evidence relating to plaintiff, Marine Power Holding, L.L.C.'s ("Marine Power"), bad faith breach-of-contract claim. Specifically, Malibu seeks to exclude: (1) speculative statements by Marine Power's agents that Malibu terminated the Agreement relating to the "557 PO" in "bad faith;" (2) certain communications and purchase orders between Malibu and Indmar, an alleged competitor of Marine Power; (4) certain purchase orders between Malibu and PCM, another alleged competitor of Marine Power; and (5) an email from non-party Jacob VanderWall ("VanderWall") to former Marine Power employee, Jason Vetzel ("Vetzel"). Malibu cites several Federal Rules of Evidence in its motion, but relies most heavily on Rules 402 and 403.

Marine Power opposes[2] the motion. For the following reasons, the motion is granted in part and denied in part. The Court assumes factual and procedural familiarity with the case and addresses each of Malibu's arguments in turn.

**LAW AND ANALYSIS**

**I.** *Standard of Law*

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.

---

[1] R. Doc. No. 211.
[2] R. Doc. No. 232.

R. Evid. 401. Relevant evidence is admissible unless otherwise provided by the United States Constitution, a federal statute, another Federal Rule of Evidence, or another rule prescribed by the U.S. Supreme Court. Fed. R. Evid. 402.

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

**II.** *Analysis*

### A. Speculative statements by Marine Power's agents that Malibu terminated the Agreement relating to the 557 PO in "bad faith"

Malibu states that "[i]t is anticipated that during trial Marine Power will attempt to support its speculative bad faith breach of contract claim through statements of its agents concerning their subjective belief that Malibu acted in 'bad faith,' and that Malibu terminated the Agreement, not because Marine Power failed to perform, but because Malibu got a 'better deal' from another engine supplier for substitute engines."[3] Malibu seeks to exclude such speculative statements.

The Court of course agrees that self-serving speculation will not be permitted at trial. *See Howard v. Offshore Liftboats, LLC*, No. 13-4811, 2016 WL 316716, at *4 (E.D. La. Jan. 26, 2016) (Morgan, J.) ("A lay opinion witness may not testify based on speculation.") (citation omitted). However, Marine Power assures the Court in its response that no speculative evidence will be offered at trial. It argues that the statements identified by Malibu were made during the deposition of Marine Power's Rule 30(b)(6) representative, Cameron Gilly ("Gilly"), over seven months ago and before much of the discovery in this case had taken place. Marine Power argues that documents since produced have substantiated Gilly's speculation that Malibu terminated the 557

---

[3] R. Doc. No. 211-12, at 2.

PO because it obtained a better deal.  Thus Marine Power states that its witnesses "will not be speculating about anything at trial."[4]

It is uncertain at this stage of the proceedings what the testimony at trial will be. Accordingly, the Court denies Malibu's motion in favor of addressing particular objections regarding speculative testimony if and when they should be raised at trial.  But to be clear, a witness's speculation is not admissible simply because there is evidence in the record to support the speculation.  The rule is that "[a] lay witness's opinion testimony which constitutes speculation as to what might have been done or what might have occurred is not based on his first-hand perception of actual events, and thus does not satisfy the requirements of Federal Rule of Evidence 701." *Howard*, 2016 WL 316716, at *4 (citation omitted).  Because accurate conjecture is still conjecture, it will not be admissible at trial.

> B. **Certain communications and purchase orders between Malibu and Indmar, an alleged competitor of Marine Power; and certain purchase orders between Malibu and PCM, another alleged competitor of Marine Power**

Pursuant to Article 1997 of the Louisiana Civil Code, an obligor that breaches a contract in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of its failure to perform.  "'Bad faith' means more than mere bad judgment or negligence; it implies the conscious doing of a wrong for dishonest or morally questionable motives." *Duodesk v. Gee Hoo Indus. Corp.*, No. 14-1363, 2016 WL 3548451, at *5 (E.D. La. June 30, 2016) (Zainey, J.) (citing *Bond v. Broadway*, 607 So.2d 865 (La. App. 2d Cir. 1992)).  Therefore, bad faith "generally implies actual or constructive fraud or a refusal to fulfill contractual obligations, not an honest mistake as to actual rights or duties." *1100 S. Jefferson Davis Parkway, LLC v. Williams*, 165 So. 3d 1211, 1217 (La. App. 4 Cir. 2015) (internal quotation and citation omitted).

---

[4] R. Doc. No. 232, at 8.

It follows that in order to succeed on its bad faith claim, Marine Power must demonstrate that Malibu breached the 557 PO intentionally *and* maliciously. *See* La. C.C. art. 1997, Revision Comment (b) (emphasis added). An intentional breach of contract motivated by "some motive of interest or ill will," for example, may be sufficient to establish bad faith. *Roba, Inc. v. Courtney*, 47 So. 3d 500, 508 (La. App. 1 Cir. 2010) (citation omitted); 6 La. Civ. L. Treatise, Law of Obligations § 5.22 (2d ed.).

Upon reviewing the communications and purchase orders at issue, the Court finds them to be relevant to Marine Power's claims. Marine Power argues in its opposition to Malibu's motion that it will prove bad faith by demonstrating that Malibu breached its contract with Marine Power on pretextual grounds after mending its relationship with Marine Power's competitor, Indmar, and obtaining better deals on boat engines with Indmar and another competitor, PCM. Under that theory, Malibu's communications and purchase orders with the other two companies are relevant because they constitute "direct evidence" of Marine Power's version of events.[5] The *timing* of the communications and purchase orders purportedly shows that Malibu was negotiating and reached deals with other engine suppliers shortly before the 557 PO with Marine Power was terminated. The *substance* of the purchase orders supposedly reveals that Malibu had a financial incentive to violate its contract with Marine Power. Because the communications and purchase orders are relevant for at least these two reasons, they should not be wholesale excluded.

While Malibu emphasizes that "none of the engines that Malibu purchased from Indmar or PCM were substitutes for the engines covered by the 557 PO,"[6] the equivalency of the engines covered by the 557 PO and the other engines obtained by Malibu is an unresolved fact question. Moreover, even if it were clear that the communications and purchase orders at issue pertain to

---

[5] R. Doc. No. 232, at 10.
[6] R. Doc. No. 211-12, at 3.

4

different kinds of engines than those that were the subject of the 557 PO, evidence of the purchase orders and communications would still be relevant. Marine Power argues that "the evidence at trial will show that once Malibu mended its relationship with Indmar, Malibu began looking for a way out of the 557 PO."[7] Thus, if nothing else the communications and purchase orders between Malibu and Indmar are evidence that a relationship existed between the two companies, and it is that relationship that Marine Power alleges caused Malibu to search for a pretext to terminate its contract with Marine Power.

In short, Malibu's arguments attack the weight of the evidence, not its relevance. The Court will not engage in fact-finding. The motion in limine is denied with respect to the communications and purchase orders. Malibu remains free to assert objections to specific exhibits at trial.

### C. Email from non-party VanderWall to former Marine Power employee, Vetzel

Finally, with respect to the April 28, 2014 email from VanderWall to Vetzel, the Court agrees with Malibu that this communication should be excluded both as unduly speculative and as hearsay. The opinions expressed in the email regarding the motive behind Malibu's termination of the 557 PO with Marine Power are admittedly "conjecture."[8] VanderWall at one point characterizes the information as his "best guess," and he concedes "I don't know anything definitively" and "I don't know this for a fact." Moreover, Malibu has provided the Court with a sworn declaration by VanderWall which states, among other things: "I do not have any direct personal knowledge of why Malibu Boats, LLC stopped purchasing engines from Marine Power Holding, LLC in 2014."[9] The opinions should therefore be excluded on the basis of speculation

---

[7] R. Doc. No. 232, at 9.
[8] R. Doc. No. 211-25, at 3.
[9] R. Doc. No. 211-11, at 1.

alone.[10] In addition, however, the content of the email would constitute hearsay if offered for its truth.

Although Marine Power argues that the email falls within the business record exception to the hearsay rule because "it was received by Vetzel in the course and scope of his employment at Marine Power,"[11] that position is untenable. "The individual elements required to trigger the [business record] exception's applicability show that there is no categorical rule that emails originating from or received by employees of a producing defendant are admissible under the business records exception." *In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico*, on Apr. 20, 2010, No. MDL 2179, 2012 WL 85447, at *3 (E.D. La. Jan. 11, 2012) (Barbier, J.). The reason is that "[m]any mail items received by a company do not document activities that are routine or otherwise regularly conducted." *Id.*

For the business record exception to apply to an email, the producing party must demonstrate that "the employer [of the sending employee] imposed a business duty to make and maintain such a record." *Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*, No. 06-1330, 2008 WL 1999234, at *12 (S.D. Tex. May 8, 2008) (Rosenthal, J.). Where "there [is] no showing that the document was kept in the course of some regularly conducted business activity or that it was the regular practice of the business to make such reports," the document is not a business record. *Wilander v. McDermott Int'l, Inc.*, 887 F.2d 88, 92 (5th Cir. 1989).

As another section of this Court recently observed, "many emails . . . are essentially substitutes for telephone calls[, and] [t]elephone calls are routinely made but are not admissible as 'business records' because—among other reasons—their individual content does not demonstrate the requisite regularity." *In re Oil Spill*, 2012 WL 85447, at *3. Here, the email's context indicates

---

[10] Neither party will call VanderWall as a witness at trial. *See* R. Doc. No. 216.
[11] R. Doc. No. 232, at 11.

that it is more akin to a telephone call than a regularly conducted business activity, and Marine Power has provided the Court with no evidence to the contrary. The email is hearsay and does not fall within the "business record" exception set forth in Rule 803(6) of the Federal Rules of Evidence.

The Court further finds that any probative value of the email is substantially outweighed by the dangers of unfair prejudice and confusing the jury. Accordingly, the Court also excludes the email pursuant to Rule 403.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Malibu's motion is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** insofar as the April 28, 2014 email from VanderWall to Vetzel is excluded. The motion is **DENIED** in all other respects.

New Orleans, Louisiana, July 28, 2016.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**