**MINUTE ENTRY**
**AFRICK, J.**
**August 8, 2016**
**JS-10 00:05**

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**MARINE POWER HOLDING, L.L.C.**                    **CIVIL ACTION**

**VERSUS**                                                   **No. 14-912**

**MALIBU BOATS, LLC**                                    **SECTION I**

## ORDER

During the trial of this matter the Court noticed a potential ambiguity in its order and reasons[1] addressing exhibit objections.  In order to ensure that its order is clear, the Court informed the parties that it would amend the order to clarify the Court's ruling.  Specifically, the Court amends pages 10 and 11 of the original order to make clear that Marine Power exhibit 101 need not be redacted.  Accordingly,

**IT IS ORDERED** that the Court's order and reasons regarding exhibit objections is hereby **AMENDED** as set forth in the attached "Amended Order and Reasons."

---

[1] R. Doc. No. 274.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MARINE POWER HOLDING, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **No. 14-912** |
| **MALIBU BOATS, LLC** | **SECTION I** |

<u>**AMENDED ORDER AND REASONS**</u>

The Court has received objections[2] to certain exhibits and responses[3] to objections filed by plaintiff, Marine Power Holding, L.L.C. ("Marine Power"), and defendant, Malibu Boats, LLC ("Malibu").  In response to the Court's August 1, 2016 minute entry,[4] the Court has also received from each party a list "of those exhibits that it actually anticipates introducing" at trial.  Having considered the objections, the responses, and the applicable law, the Court rules as set forth below.

In order to proceed most efficiently, the Court generally addresses objections on a categorical basis as opposed to engaging in an exhibit-by-exhibit analysis.  The Court recognizes that there are multiple objections to many of the exhibits.  Accordingly, while one objection to a particular exhibit may be deferred until trial, the exhibit may be excluded pursuant to another objection.  The parties can identify which exhibits are excluded and which objections are deferred by referring to the Court's order in the "Conclusion" section.

I.    **Exhibits That Neither Party Anticipates Introducing At Trial**

There are a number of objections to exhibits that neither party anticipates introducing at trial.  To avoid a waste of judicial resources, the Court will address the admissibility of such

---

[2] R. Doc. Nos. 228, 235.
[3] R. Doc. Nos. 246, 249.
[4] R. Doc. No. 250.

exhibits if and when a party attempts to introduce them.  Accordingly, any objections to the following exhibits are **DEFERRED UNTIL TRIAL:**

o   Marine Power exhibits: 20, 26, 27, 35, 98, 102, 103, 105, 108, 127, 144, 150, 156, 184, 195, 198, and 199.

o   Malibu exhibits: 116, 117, 118, 148, 149, 150, 152, and 160.[5]

## II.   Exhibits Addressed By The Motions In Limine

Some of the exhibit objections were addressed by the Court's various orders[6] in response to the parties' motions in limine.  Consistent with the Court's rulings in those orders,

o   Malibu's objections to Marine Power exhibits 120 (Malibu's complaint in the Tennessee action) and 130 (memorandum opinion from the Tennessee action) are sustained and the exhibits are excluded.  This Court's order and reasons[7] addressing the admissibility of the Tennessee litigation explained that the fact of the Tennessee lawsuit may be relevant to Marine Power's claims, but the disposition of that lawsuit is not.

The probative value of the memorandum opinion from the Tennessee action is substantially outweighed by the danger of unfair prejudice, confusing the jury, and wasting time.  Exhibit 130 is **EXCLUDED** pursuant to Rule 403.  As for Malibu's complaint in the Tennessee lawsuit, the Court finds that its minimal probative value is also substantially outweighed by the danger of unfair prejudice, confusing the jury, and wasting time.  The complaint consists of legal jargon and unproven factual allegations, not relevant evidence. Assuming Marine Power first obtains permission from the Court at the bench, it may

---

[5] These constitute all of the Malibu exhibits objected to by Marine Power.  Accordingly, all of Marine Power's exhibit objections are deferred until trial.
[6] R. Doc. Nos. 237, 239, 240, 241.
[7] R. Doc. No. 237.

reference the fact and the timing of the Tennessee litigation without using Malibu's complaint.  Providing the complaint itself to the jury would only waste time and confuse the issues.  Accordingly, exhibit 120 should be **EXCLUDED** pursuant to Rule 403.

o  Malibu's objection to Marine Power exhibit 142 (the April 28, 2014 email from Jacob VanderWall to Jason Vetzel) was addressed by this Court's order and reasons[8] addressing certain speculative evidence, irrelevant documents, and evidence pertaining to Marine Power's bad faith claim.  For the reasons set forth in that order, Marine Power exhibit 142 is **EXCLUDED**.

## III.    Foundation Objections

Malibu objects to the introduction of many Marine Power exhibits unless a proper foundation is first established pursuant to Rule 104(b) of the Federal Rules of Evidence.[9]  Rule 104(b) states: "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.  The court may admit the proposed evidence on the condition that the proof be introduced later."  "Under Rule 104(b), the trial court must admit the evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification."  *United States v. Isiwele*, 635 F.3d 196, 199 (5th Cir. 2011).  Whether a sufficient factual foundation has been established to permit the introduction of an exhibit is a decision best reserved for trial.  Accordingly, all objections premised on Rule 104(b), unless specifically stated to the contrary herein, are **DEFERRED UNTIL TRIAL**.

---

[8] R. Doc. No. 241, at 5.
[9] Specifically, Malibu objects to Marine Power exhibits 7, 8, 14, 20, 21, 26, 27, 35, 41, 47, 48, 63, 79, 80, 87, 97, 98, 101, 103, 105, 108, 140, 141, 144, 150, 156, 184, 195, 198, and 199.

## IV.    Summary Document Objections

Malibu objects to Marine Power introducing certain "summary documents" under Rule 1006 because Marine Power has supposedly failed to comply with the Rule's requirement that "[t]he proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place."[10]  Fed. R. Evid. 1006.  In response, Marine Power asserts that it does not intend to use Rule 1006 to introduce the exhibits.  Marine Power explains:

> Exhibit 47 contains projected financial and inventory details for a contemplated supplier agreement between Malibu and Marine Power.  Exhibit 48 is a collection of purchase orders issued to Marine Power by Malibu.  Exhibit 122 contains a listing of Marine Power's damages, including a detailed list of obsolete parts on hand.  Exhibit 124 is a list of the steps required to repurpose a Malibu engine for resale.  Exhibit 128 contains a detailed list of financial data supporting Marine Power's lost profits claim. None of these documents purport to summarize other data.  Exhibit 195 is a list of transactions in which Marine Power has sold obsolete parts to other parties in mitigation of its damages.[11]

Given Marine Power's concession, Malibu's objections are rendered moot.  As such, the Court does not address whether the exhibits qualify as Rule 1006 summaries.  A decision as to the admissibility of the exhibits on some other basis is **DEFERRED UNTIL TRIAL**.

## V.    Grouping Objections

Malibu objects to a number of Marine Power exhibits[12] on the basis that there are multiple documents that have been listed as a single exhibit.  While Malibu has cited no rule or case that forbids such grouping, the Court observes that, as a practical matter, the documents in a single exhibit must be sufficiently related to justify their introduction as a single unit.  Considering the

---

[10] Malibu objects to Marine Power exhibits 47, 48, 122, 124, 128, and 195.
[11] R. Doc. No. 246, at 6-7.
[12] Of the exhibits Marine Power actually intends to introduce at trial, Malibu objects to Marine Power exhibits 18, 21, 59, 60, 101, 121, and 126.

Court's lack of information regarding the reason these documents were grouped together as single exhibits, these objections are **DEFERRED UNTIL TRIAL**.

## VI. Character Evidence Objections

Malibu objects to Marine Power introducing certain alleged character evidence for a purpose other than that permitted by Rules 404 and 405. Specifically, Malibu worries that Marine Power will use an alleged discrepancy on the resume of former Marine Power employee, Jason Vetzel ("Vetzel"), to attack Vetzel's character. The Court will address objections based on improper use of character evidence at trial. These objections are **DEFERRED UNTIL TRIAL**.

## VII. Rule 408 Objections

Malibu argues that several exhibits are inadmissible because they constitute evidence of settlement discussions which should be excluded by Rule 408 of the Federal Rules of Evidence.[13] Rule 408 provides:

> **(a) Prohibited Uses**. Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> **(1)** furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>
> **(2)** conduct or a statement made during compromise negotiations about the claim-- except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> **(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

---

[13] Malibu objects to Marine Power exhibits 97, 101, 102, and 121.

The protection of Rule 408 extends to legal conclusions, factual statements, internal memoranda, and the work of non-lawyers and lawyers alike so long as the communications were "intended to be part of . . . negotiations toward compromise." *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 295 (5th Cir. 2010). "Litigation need not have commenced for Rule 408 to apply." *Id.* Moreover, as the party objecting to the admission of these communications, Malibu has the burden of proving the preliminary facts required to show the inadmissibility of the compromise. *Id.*

Marine Power challenges Malibu's Rule 408 objection by arguing that "the exhibits do not relate to any settlement negotiations regarding 'the claim' at issue in this suit."[14] Marine Power claims that because the emails were sent prior to the termination of the contract and the filing of this lawsuit, they cannot relate to settlement discussions. Instead, Marine Power suggests the communications should be considered business negotiations "about continued performance of the 557 PO."[15]

Marine Power's argument is inconsistent with Fifth Circuit precedent: "[l]itigation need not have commenced for Rule 408 to apply." *Lyondell Chem. Co.*, 608 F.3d at 295. Rather, "the Rule 408 exclusion applies where an actual dispute or a difference of opinion exists, rather than when discussions crystallize to the point of threatened litigation." *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 527 (3d Cir. 1995). "[T]he question under the rule is whether the statements or conduct were intended to be part of the negotiations toward compromise." *MCI Commc'ns Servs., Inc. v. Hagan*, 641 F.3d 112, 117 (5th Cir. 2011).

---

[14] R. Doc. No. 246, at 5-6.
[15] R. Doc. No. 246, at 6.

Accordingly, the Court rejects Marine Power's argument that the emails do not constitute settlement discussions because they were exchanged prior to the filing of this lawsuit. The content of the emails clearly demonstrates that "an actual dispute or difference of opinion" existed between Marine Power and Malibu at the time the emails were sent. While Malibu had not yet cancelled the 557 PO, the parties obviously disagreed regarding their respective obligations under the contract and a future lawsuit was foreseeable. *See* Marine Power exhibit 97 ("I appreciate Malibu's intention to settle the accounts but I am afraid things could become contentious."); Marine Power exhibit 102 ("I wanted to let you know that our goal is to settle this as businessmen without lawyers acting on our behalf. That being said, I thought it only fair to advise that we have had some assistance from lawyers . . . .").[16]

There is, however, an important caveat: even though the Court is convinced that the negotiations potentially fall within the ambit of Rule 408, the Rule only excludes the communications if Marine Power offers them "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. If the attempts to compromise are offered for another purpose, "such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution," such attempts to compromise are not barred by Rule 408. Fed. R. Evid. 408(b); *see also* 2 McCormick On Evid. § 266 (7th ed.) (gathering examples). "In

---

[16] It makes no difference that the bulk of the communications Marine Power seeks to introduce were authored by Marine Power. "The [2006] amendment makes clear that Rule 408 excludes compromise evidence even when a party seeks to admit its own settlement offer or statements made in settlement negotiations." Fed. R. Evid. 408 Advisory Committee Notes, 2006 Amendment. "If a party were to reveal its own statement or offer, this could itself reveal the fact that the adversary entered into settlement negotiations." *Id.* "The protections of Rule 408 cannot be waived unilaterally because the Rule, by definition, protects both parties from having the fact of negotiation disclosed to the jury." *Id.*

evaluating the 'another purpose' exception to Rule 408, the district court must balance the exception against the policy of encouraging settlements, and take care that an 'indiscriminate and mechanistic' application of the exception does not undermine the rule's public policy objective." *Gulf S. Mach., Inc. v. Am. Standard, Inc.*, No. 97-065, 1999 WL 102752, at *2 (E.D. La. Feb. 22, 1999) (Vance, J.) (citation omitted).  "As in other situations where evidence is admissible for one purpose but not for another, the probative value for the proper purpose must be weighed against likelihood of improper use, with due regard to the probable efficacy of a limiting instruction."  2 McCormick On Evid. § 266.

Marine Power argues that the proper purpose exception applies here because "the subject exhibits are not being offered to prove the validity of Marine Power's breach of contract claim, but to provide factual context regarding Malibu's bad faith."[17]  In particular, Marine Power argues that the communications are being offered for the proper purpose of demonstrating that Malibu was engaging Marine Power in sham discussions regarding the 557 PO "in an effort to mislead Marine Power into believing that Malibu intended to honor its obligations under the 557 PO right up until the moment that Malibu set in motion its carefully orchestrated termination of the 557 PO and simultaneous lawsuit against Marine Power in Tennessee."[18]

Upon review, the Court agrees with Marine Power that at least portions of the challenged documents are proffered for the proper purpose of supporting Marine Power's bad faith claim.  In order to succeed on its bad faith claim, Marine Power must demonstrate that Malibu breached the 557 PO intentionally and maliciously.  *See* La. C.C. art. 1997, Revision Comment (b) (emphasis added).  Marine Power's theory—as Marine Power describes it above—is that Malibu breached in

---

[17] R. Doc. No. 246, at 5.
[18] R. Doc. No. 246, at 5.

bad faith because it engaged Marine Power in "sham discussions" regarding the 557 PO while at the same time intending to terminate the contract once a better deal with Marine Power's competitors could be reached.  Under that theory, the emails are not being offered to show that Malibu has *admitted* wrongdoing, but rather to show that by falsely engaging in the negotiations Malibu was *committing* wrongdoing.  Nothing in Rule 408 precludes their admission for that purpose.

"Rule 408 is . . . inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions."  § 5314Permissible Uses—Other, 23 Fed. Prac. & Proc. Evid. § 5314 (1st ed.).  "Courts regularly find Rule 408 inapplicable . . . where the compromise negotiations, in and of themselves, give rise to a cause of action."  *Nicholson v. Thrifty Payless, Inc.*, No. C12-1121RSL, 2014 WL 618775, at *3 n.4 (W.D. Wash. Feb. 18, 2014).  "For example, conduct or statements made during settlement negotiations will be considered where (a) an insurer's settlement offer is the basis for a bad faith claim, (b) the substance of the discussions are necessary to prove a subsequent breach of the settlement agreement, and/or (c) the negotiations involved threats or other wrongdoing that forms the basis for a claim."  *Id.* (citing Fed. R. Evid. 408 Advisory Committee Notes, 2006 Amendment).

Admission of at least parts of the documents is also consistent with the policy behind Rule 408.  Rule 408 is meant "to promote settlement negotiations by removing the fear that any communications made in furtherance of the negotiation will later be used against one of the parties."  *Nat'l Presort, Inc. v. Bowe Bell + Howell Co.*, 663 F. Supp. 2d 505, 508 (N.D. Tex. 2009) (citation omitted).  Because Marine Power is not offering the emails for a purpose prohibited by Rule 408, their admission into evidence does not undermine this policy objective.  Indeed, if Marine Power is correct, then Malibu entered into the negotiations never actually intending to

reach an agreement.  The Court therefore refuses to exclude the emails in their entirety.  However, just as the Court refuses to entirely exclude the emails, it also refuses to entirely admit them.

For example, Malibu allegedly terminated the contract on April 15, 2014.[19]  The communications contained in Marine Power exhibit 121 were exchanged on April 16, 2014.  Both parties have agreed that, unless it is suggestive of pre-breach intent, post-breach conduct is irrelevant to a bad-faith breach of contract claim pursuant to Article 1997 of the Louisiana Civil Code.[20]  Accordingly, exhibit 121 is not relevant to demonstrating that Malibu was negotiating in bad faith prior to April 15, 2014.  Moreover, the portions of exhibit 121 to which Malibu objects, which are the emails identified by Bates Numbers 7234 and 7211-7212,[21] are of little probative value.  The Court therefore **EXCLUDES** the Marine Power exhibits with Bates Numbers 7234 and 7211-7212 not only on the basis of Rule 408, but also pursuant to Rule 403 because their probative value is substantially outweighed by the danger of unfair prejudice, confusing the jury, and wasting time.

Likewise, the Court's review of exhibits 97 and 102 convinces it that admission of portions of those documents would be inappropriate under Rule 408 and Rule 403.  Consequently, the Court will order those portions of the documents to be redacted and will, upon request, provide an appropriate limiting instruction to ensure that admission of the emails will not work undue prejudice on Malibu.  No lines need be redacted from Marine Power exhibit 101.

Accordingly, Marine Power is directed to **REDACT** the following lines from its exhibits:

---

[19] R. Doc. No. 1.
[20] The Court discusses this notion more fully in its order and reasons addressing the Tennessee litigation.  R. Doc. No. 237, at 2 (citing *LAD Servs. of La., LLC v. Superior Derrick Servs. LLC.*, 167 So. 3d 746, 761 (La. Ct. App. 1st Cir. 2014)).
[21] R. Doc. No. 228, at 13.

o  In Marine Power exhibit 97, the following line is **EXCLUDED**: "I appreciate Malibu's intention to settle the accounts but I am afraid things could become contentious."  The probative value of this statement is substantially outweighed by the danger of unfair prejudice to Malibu, and the line should accordingly be excluded pursuant to Rule 403 as well as pursuant to Rule 408.

o  In Marine Power exhibit 102, within the email sent by Cameron Gilly to Ritchie Anderson, the following lines are **EXCLUDED**: "I wanted to let you know that our goal is to settle this as businessmen without lawyers acting on our behalf.  That being said, I thought it only fair to advise that we have had some assistance from lawyers but just to ensure that we are not getting locked into anything as we work with Malibu on how to best proceed.  I assume you are doing the same but I wanted to be as up front as possible during this difficult time for MP." The probative value of these statements is substantially outweighed by the danger of unfair prejudice to Malibu, and the lines should accordingly be excluded pursuant to Rule 403 as well as pursuant to Rule 408.

**VIII.   Hearsay Objections**

Malibu objects on hearsay grounds to the introduction of a number of emails and other documents exchanged between Marine Power employees, Malibu employees, and third parties.[22] According to Malibu, many of these emails contain hearsay within hearsay, and some of them contain settlement discussions barred by Rule 408.  In response, Marine Power summarily argues that all of the emails are admissible as business records pursuant to Rule 803(6).[23]

---

[22] *See* R. Doc. No. 228, at 1.
[23] R. Doc. No. 246, at 2.

As an initial matter, even a casual inspection of the various emails at issue suggests that they cannot all be admissible pursuant to the business record exception.  Indeed, as Judge Barbier has cogently noted, such a categorical application of the exception to emails is unworkable.  *See In re Oil Spill*, No. MDL 2179, 2012 WL 85447, at *2 (E.D. La. Jan. 11, 2012) (Barbier, J.).  In order for the contents of an email to be admissible as a business record, the proponent of the evidence must establish five things.

> First of all, the email must have been sent or received at or near the time of the event(s) recorded in the email.  Fed. R. Evid. 803(6)(A).  Thus, one must look at each email's content to determine whether the email was created contemporaneously with the sender's acquisition of the information within the email.  Second, the email must have been sent by someone with knowledge of the event(s) documented in the email.  *See* Fed. R. Evid. 803(6)(A).  This requires a particularized inquiry as to whether the declarant—the composer of the email—possessed personal knowledge of the information in the email.  Third, the email must have been sent or received in the course of a regular business activity [(citing Fed. R. Evid. 803(6)(B))], which requires a case-by-case analysis of whether the producing defendant had a policy or imposed a business duty on its employee to report or record the information within the email.  Fourth, it must be the producing defendant's regular practice to send or receive emails that record the type of event(s) documented in the email.  Fed. R. Evid. 803(6)(C).  *See also Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners*, LLC, 2008 WL 1999234, at *12 (S.D. Tex. May 8, 2008) (for the business records exception to apply to an email, "the employer [must have] imposed a business duty to make and maintain such a record.") (emphasis added); *Wilander v. McDermott Int'l, Inc.*, 887 F.2d 88, 91 (5th Cir. 1989) (requiring proof that the person who prepared the document prepared it as part of a regularly conducted business activity).  This would require proof of a policy of the producing defendant to use email to make certain types of reports or to send certain sorts of communications; it is not enough to say that as a general business matter, most companies receive and send emails as part of their business model.  Fifth, a custodian or qualified witness must attest that these conditions have been fulfilled—which certainly requires an email-by-email inquiry.  Fed. R. Evid. 803(6)(D).[24]

*Id.* at *3 (some citations omitted).

---

[24] Furthermore, the objecting defendant is permitted under the rule to argue that the particular email should be excluded due to concerns of lack of trustworthiness, based on the information source underlying the email content or the circumstances under which the email was sent and received.  *In re Oil Spill*, 2012 WL 85447, at *3 (citing Fed. R. Evid. 803(6)(E)).

In short, proving that a particular email qualifies for the business record exception requires a party to provide substantial information to the Court. Marine Power has given the Court nothing that would allow the Court to engage in such an inquiry. By addressing the emails wholesale, Marine Power has left the Court to speculate, based only on the content of the emails themselves and Marine Power's bare bones Rule 902(11) certifications,[25] as to whether the emails meet the five requirements of Rule 803(6). Moreover, even if the emails are business records, Marine Power has not addressed Malibu's contention that many of them contain hearsay within hearsay. Such double hearsay exists where "the record is prepared by an employee with information supplied by another person." *In re Oil Spill*, 2012 WL 85447, at *4.[26]

As the proponent of the evidence, Marine Power bears the burden of establishing its admissibility once challenged. *See, e.g., United States v. Fernandez–Roque*, 703 F.2d 808, 812 (5th Cir. 1983); *see also Bergeron v. Great W. Cas. Co.*, No. 14-13, 2015 WL 3505091, at *4 (E.D. La. June 3, 2015) (Morgan, J.) ("The burden now shifts to Plaintiff to prove an exception to the hearsay rule applies.").

The Court finds Marine Power's brief single paragraph rebuttal of Malibu's email-specific challenges insufficient to establish that each email qualifies as a business record. However, the Court will not exclude the emails in their entirety at this time. Moreover, as Malibu points out in many of its objections, the emails are only inadmissible on the basis of hearsay if they are offered for their truth. As Marine Power has not provided the Court with the purposes for which the

---

[25] R. Doc. No. 242-1.

[26] For example, "[a]lthough the 'outer hearsay' of the email at issue may be admissible under the business records exception, the 'inner hearsay' of information provided by an outsider to the business preparing the record must likewise fall under a hearsay exception—the business records exception or some other exception—to be admissible." *Id.*

various emails will be offered, for that reason alone the Court is in no position to decide the admissibility of the emails at this juncture.  Malibu's objections to the emails and other documents are therefore **DEFERRED UNTIL TRIAL**.

**CONCLUSION**

For the reasons set forth above,

**IT IS ORDERED** that Marine Power's objections to Malibu's exhibits are **DEFERRED UNTIL TRIAL**.

**IT IS FURTHER ORDERED** that Malibu's objections to Marine Power's exhibits are also **DEFERRED UNTIL TRIAL** except with respect to **Marine Power exhibits 120, 130, 142**, and—within Marine Power exhibit 121—the documents with **Bates Numbers 7234 and 7211-7212**, which are **EXCLUDED**.

**IT IS FURTHER ORDERED** that Marine Power **REDACT** certain exhibits as set forth herein.

New Orleans, Louisiana, August 8, 2016.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**
